IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JAMES R. HUGGINS                                                              PLAINTIFF

                  v.                                Civil No. 10-3066

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                        DEFENDANT

**MEMORANDUM OPINION**

I.     **Factual and Procedural Background**

        Plaintiff, James R. Huggins, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

        Plaintiff protectively filed his DIB and SSI applications on October 12, 2007, alleging disability as of October 6, 2007, due to depression, back and neck pain, and headaches. Tr. 94, 169, 227. On the alleged onset date, Plaintiff was fifty three years old with a high school equivalency degree and some military experience. Tr. 47-48, 100, 175, 490. He has past relevant work as a tractor-trailer truck driver. Tr. 100, 170-171, 177-180, 231, 234.

        Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 109-115, 118-121. At Plaintiff's request, an administrative hearing was held on June 24, 2009. Tr. 38-85. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on December 22, 2009, finding Plaintiff was not disabled within the meaning of the Act. Tr. 91-101. Subsequently, the Appeals Council denied Plaintiff's Request for Review on June 22,

2010, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of that decision.

## II.     Medical History

Plaintiff was treated at various Veterans Administration ("VA") facilities for the following impairments: esophageal reflux, headaches, osteoarthritis, degenerative joint disease, obesity, depression, abdominal pain post ventral hernia repair in 2004, tobacco abuse, hyperlipidemia, glaucoma, numbness in his hands and legs, and chronic back pain. Tr. 247-370, 396-402, 410-489, 501-545, 502-545.

In May 2005, Plaintiff presented to the VA with complaints of chest pain, bilateral hand numbness, headaches, neck and back pain, a lung nodule, and ventral abdominal pain. Tr. 340-370. CT imaging of Plaintiff's abdomen was normal, but he was found to have H. pylori. Tr. 340. A CT of Plaintiff's chest revealed benign calcified pulmonary nodules, but no noncalcified pulmonary nodules or masses were seen. Tr. 340, 343. A Persantine stress test yielded normal results, with no evidence of ischemia. Tr. 340, 343, 366-367, 434-437. A lower extremity arterial examination was within normal limits. Tr. 344, 360-361, 487. Plaintiff was placed on cholesterol medication for hyperlipidemia and antibiotics for H. pylori. Tr. 341.

On June 21, 2007, Plaintiff saw Michael L. Springer, A.P.N., with complaints of abdominal pain, numbness in his hands, and depression. Tr. 280-281. Springer diagnosed Plaintiff with degenerative joint disease, obesity, abdominal pain, and glaucoma/macular degeneration (per history). Tr. 281. He gave Plaintiff a trial of Citalopram for depression. Tr. 281.

An MRI of Plaintiff's cervical spine, dated June 22, 2007, revealed a small disc protrusion at C3/4 and tiny protrusions at C4/5 and C5/6, with mild left foraminal narrowing at C5/6 and mild

right foraminal narrowing at C3/4. Tr. 248, 362-366. An MRI of Plaintiff's thoracic spine revealed a tiny left paracentral disc protrusion at T7/8 and T10/11, but no significant canal stenosis or foraminal narrowing was noted, and vertebral body heights were maintained. Tr. 248-249, 362-366. An MRI of Plaintiff's lumbar spine revealed mild short pedicle, epidural lipomatosis at L5 and the sacrum canal, a small disc bulge and osteophyte complex at L5/S1 with mild foraminal narrowing, mild disc bulging at L2/3, L3/4, and L4/5 with mild facet and ligamentous hypertrophy, and mild scoliosis. Tr. 249, 362-366. Nerve studies revealed electrodiagnostic evidence of subacute right C8 radiculopathy, but no evidence of ulnar or median neuropathy. Tr. 279, 284-285, 332-333, 359-360.

On July 19, 2007, Plaintiff went to Mountain Home VA Clinic. Tr. 290-293. Plaintiff stated Tramadol eased his back pain. Tr. 290. At the time, he was taking Albuterol, Citalopram, Methocarbamol, Naproxen, Omeprazole, Simvastatin, Tramadol, and Travoprost. Tr. 291. On examination, Plaintiff had diminished chest sounds. Tr. 292. He had full range of motion in his extremities. Tr. 292. Sam R. Barnes, A.P.N., reviewed Plaintiff's MRIs and noted a disc protrusion in the cervical and thoracic spine and spondylosis throughout the entire spine without evidence of canal stenosis. Tr. 292. Barnes also noted evidence of upper extremity radiculopathy. Tr. 292. He referred Plaintiff for neurosurgery and orthopedic evaluations, occupational therapy, ongoing pain management, and cautioned him to quit smoking. Tr. 292. On July 20, 2007, it was determined Plaintiff was not a candidate for neurosurgical treatment. Tr. 265.

On July 11, 2007, Plaintiff underwent an eye examination at North Little Rock Eye Clinic. Tr. 258-262, 287-289. Plaintiff was diagnosed with open-angle glaucoma of both eyes and nuclear sclerotic cataracts, greater on the right. Tr. 261.

On August 14, 2007, Plaintiff underwent a psychosocial assessment with James A. Dorethy, a social worker. Tr. 290. At the time of the interview, Plaintiff had been taking Celexa for a month with slight improvement. Tr. 294. Dorethy diagnosed Plaintiff with adjustment disorder with mixed features and estimated his Global Assessment of Functioning ("GAF") score at 55. Tr. 290, 294-297. At a follow-up appointment, Plaintiff stated Celexa had not been significantly helpful and he continued to have chronic sleep problems and excessive agitation. Tr. 297-299. In October 2007, Plaintiff was assessed with depressive disorder (not otherwise specified) vs. secondary to general medical conditions and given a GAF score of 51. Tr. 299-301. He was instructed to discontinue Celexa and begin a trial of Sertraline for depression and Chantix for smoking cessation. Tr. 301. On October 24, 2007, Plaintiff stated his mood was "a lot better than it was" and his overall functioning had improved significantly. Tr. 302. He had cut his caffeine intake in half and was walking approximately two miles per day. Tr. 302. He had also been working on his 1957 Chevy. Tr. 302.

On October 16, 2007, Plaintiff went to the Mountain Home VA Clinic. Tr. 303-305. On examination, Plaintiff had diminished breath sounds and a bilateral straight leg raise of twenty degrees with low back pain. Tr. 305, 484. He was referred for physical therapy and given a prescription for a TENS unit. Tr. 305.

On January 15, 2008, Jerry Thomas, M.D., an agency specialist, reviewed Plaintiff's medication records and determined he did not have a severe impairment. Tr. 374.

On February 7, 2008, Plaintiff exhibited tenderness over the cervical and lumbar paravertebral regions and had a positive straight leg raise. Tr. 398. Heel to toe walking was fair. Tr. 398. As a result, Plaintiff began receiving trigger point injections in his cervical and lumbar spine. Tr. 396-400, 410-414, 417-426. Plaintiff continued receiving trigger point injections through

September 2008. Tr. 463-465.

At an eye examination conducted on the same day, Plaintiff stated he had not refilled his prescription for Travatan since November 2007. Tr. 400-402. Decreased tear film was noted in both eyes. Tr. 401. Plaintiff was assessed with glaucoma of both eyes and nuclear sclerotic cataracts, greater on the right. Tr. 401. He was instructed to re-start Travatan and return in four months. Tr. 401.

In a Psychiatric Review Technique Form ("PRTF") dated February 13, 2008, Jay Rankin, an agency specialist, determined Plaintiff's impairments did not meet or equal the requirements of Listing 12.04 (affective disorders). Tr. 377-394. Rankin found mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. Tr. 387. In a Mental Residual Functional Capacity ("RFC") Assessment, Rankin found Plaintiff moderately limited in his ability to maintain attention and concentration for extended periods, complete a normal workday and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Tr. 391-393. He found Plaintiff not significantly limited in all remaining work-related categories. Tr. 393.

In August 2008, Plaintiff resumed mental health counseling with Mr. Dorethy. Tr. 466-469. Plaintiff reported irritability, agitation, trouble focusing, difficulty with concentration and memory, and poor sleep. Tr. 466-469. Dorethy assessed Plaintiff with depressive disorder not otherwise specified vs. secondary to general medical conditions and estimated his GAF score of 51. Tr. 468. Plaintiff was instructed to re-start Sertraline and increase his dosage. Tr. 468. In December 2008,

Plaintiff reported sleeping better on Gabapentin, which he took for chronic headaches. Tr. 542-545. Dorethy noted Plaintiff had cut caffeine use and lost twenty pounds. Tr. 543. He also noted improvement in Plaintiff's overall mood/functioning. Tr. 542. He estimated Plaintiff's GAF score at 51. Tr. 545. On May 12, 2009, Plaintiff reported increased irritability and family stressors. Tr. 530-534. As a result, he was given a trial of Venlafaxine and Buspirone. Tr. 534.

On February 5, 2009, Plaintiff was evaluated by John D. Schwankhaus, M.D., a neurologist, for complaints of chronic headaches. Tr. 538-541. Plaintiff reported progressively worsening headaches, which he experienced three to four times a week. Tr. 538. Headaches were stable on Gabapentin, but were not improving. Tr. 540. An MRI of Plaintiff's brain, dated December 12, 2008, revealed a benign mass lesion in the left mastoid bone, but was otherwise unremarkable. Tr. 517-519. Plaintiff's neurological examination revealed occipital nerve tenderness and decreased sensation in the C8 distribution. Tr. 539-540. Dr. Schwankhaus diagnosed Plaintiff with migraine headaches and occipital neuralgia. Tr. 540. He offered to perform an occipital nerve block, which Plaintiff refused. Tr. 540. Dr. Schwankhaus increased Plaintiff's dosage of Gabapentin. Tr. 540. At a follow-up appointment in May 2009, Plaintiff stated the frequency and intensity of his headaches had decreased to a tolerable level, although he still experienced headaches two times a day. Tr. 526-528. As a result, Plaintiff's dosage of Gabapentin was increased. Tr. 528.

On March 13, 2009, Plaintiff presented to the VA pain clinic with complaints of stomach pain and back pain following his last trigger point injections. Tr. 536-538. Physical examination revealed an obese, hard abdomen with no tenderness, rebound, or evidence of hernia. Tr. 537. X-ray imaging revealed disc protrusions in the cervical and thoracic spine and spondylosis throughout the entire spine, without evidence for canal stenosis. Tr. 537. Plaintiff was prescribed Methadone for

pain. Tr. 537. On May 26, 2009, Plaintiff stated he was doing well with his medications. Tr. 529.

### III.   Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the

claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV.  ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since October 6, 2007, the alleged onset date. Tr. 96. At step two, the ALJ found Plaintiff suffered from back disorder and mood disorder, both of which were considered severe impairments under the Act. Tr. 96. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 96-97.

At step four, the ALJ found Plaintiff had the RFC to perform medium work,[1] except that he could only occasionally climb, balance, stoop, kneel, crouch, and crawl. Tr. 97-99. Mentally, the ALJ determined Plaintiff could understand, remember, and carry out simple, routine, and repetitive tasks, respond appropriately to supervisors and usual work situations, and have occasional contact with co-workers and no contact with the general public. Tr. 97-99.

Based on these limitations, the ALJ determined Plaintiff was unable to perform his past relevant work. Tr. 100. However, after receiving vocational expert testimony, the ALJ found jobs

---

[1] Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty five pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c).

existing in significant numbers in the national economy that Plaintiff could perform.[2]  Tr. 100-101. Accordingly, the ALJ determined Plaintiff was not under a disability from October 6, 2007, the alleged onset date, through December 22, 2009, the date of the decision.  Tr. 101.

**V.    Discussion**

On appeal, Plaintiff contends the ALJ: (1) failed to consider his combined impairments in making the severity determination; and (2) improperly determined his RFC.  *See* Pl.'s Br. 10-18.  For the following reasons, the court finds that substantial evidence does not support the ALJ's decision.

At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC.  *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination.  *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

Given Plaintiff's extensive treatment history for back and neck pain, the undersigned cannot conclude that he is capable of lifting and carrying up to fifty pounds, with frequent lifting and carrying of twenty five pounds, on a daily basis.  In making his RFC determination, the ALJ

---

[2] The ALJ determined Plaintiff could perform the requirements of representative occupations such as hand packager, of which there are 660 jobs regionally and 66,000 jobs nationally, kitchen helper, of which there are 3000 jobs regionally and 372,000 jobs nationally, and cleaner, of which there are 800 jobs regionally and 80,000 jobs nationally.  Tr. 100-101.

underplayed the significance of Plaintiff's back pain, merely citing the 2007 MRI findings of "small" or "tiny" disc protrusions in Plaintiff's cervical and thoracic spine. Tr. 99. However, he made no mention of Plaintiff's consistent treatment for back pain, including trigger point injections, physical therapy, a TENS unit, and narcotic pain medication. Moreover, the ALJ failed to mention, much less discuss, Plaintiff's nerve studies, which revealed evidence of subacute right C8 radiculopathy. Tr. 279, 284-285, 292, 332-333, 359-360; *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) ("the ALJ is not free to ignore medical evidence but rather must consider the whole record."). This was error.

Additionally, the record contains only one physical RFC assessment, which was conducted by an agency specialist. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (the assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence). Dr. Thomas reviewed Plaintiff's medical records and determined he did not have a severe impairment. Tr. 374. The ALJ gave little weight to these findings. Tr. 99. However, since there are no other physical RFC assessments or consultative evaluations in the record, it is difficult to ascertain what evidence the ALJ relied on in making his RFC determination.

Finally, the ALJ made no mention of Plaintiff's glaucoma, cataracts, and abdominal pain (post hernia surgery) in his analysis. Tr. 258-262, 287-289, 400-402. As such, the court cannot determine to what extent, if any, these impairments factored into the ALJ's RFC findings.

For the aforementioned reasons, substantial evidence does not support the ALJ's determination. On remand, the ALJ should obtain a physical RFC assessment from either a treating or examining source. Once an RFC assessment is obtained, the ALJ should reconsider whether Plaintiff's RFC allowed him to engage in substantial gainful employment during the relevant time period.

## VI.     Conclusion:

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).  This matter should be remanded to the Commissioner for reconsideration of the issue of Plaintiff's RFC, based on all relevant evidence, including medical records, opinions of treating medical personnel, and Plaintiff's description of his own limitations.  *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

IT IS SO ORDERED this 30th day of January 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE